# UNITED STATES COURT OF APPEALS

**UNPUBLISHED**

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

DAVID JOSEPH SOLOMON,
            *Defendant-Appellant.*

No. 01-4121

Appeal from the United States District Court
for the Northern District of West Virginia, at Wheeling.
Frederick P. Stamp, Jr., District Judge.
(CR-00-27)

Argued: November 2, 2001

Decided: December 10, 2001

Before NIEMEYER and LUTTIG, Circuit Judges, and
Frank J. MAGILL, Senior Circuit Judge of the
United States Court of Appeals for the Eighth Circuit,
sitting by designation.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Gail Warren Kahle, LAW OFFICE OF GAIL W.
KAHLE, Wheeling, West Virginia, for Appellant. Paul Thomas
Camilletti, Assistant United States Attorney, Wheeling, West Virginia, for Appellee. **ON BRIEF:** Patrick M. Flatley, United States
Attorney, Wheeling, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

David Solomon was indicted for, and convicted of, possession of firearms by a felon in violation of 18 U.S.C. §§ 922(g)(1), (g)(9) and 924(a)(2). He now appeals, raising challenges to several of the district court's evidentiary rulings and to the sufficiency of the evidence to support his conviction.

I.

Prior to trial, Solomon moved to suppress post-arrest statements and the firearms seized from his house that triggered the instant prosecution. During the pre-trial suppression hearing, the government called as a witness Solomon's wife, who both appeared and testified. Solomon's trial was thereafter set for November 6, 2000, and Mrs. Solomon was subpoenaed to testify again. She came to court on November 6, but did not testify because only the jury selection took place on that date. The court directed the jury to return on November 14 for the first day of trial, and the government advised Mrs. Solomon to do the same. However, Mrs. Solomon failed to appear on November 14. On motion by the government, the district court allowed the prosecution to introduce into evidence Mrs. Solomon's testimony from the suppression hearing. The district court also admitted into evidence an ATF Form 4473, which recorded a firearm purchase by Solomon.

II.

The defendant first challenges the admissibility at trial of his wife's testimony from the suppression hearing, contending, first, that his wife was not "unavailable" within the meaning of Fed. R. Evid. 804(a)(5), and, second, that, even if she was "unavailable" as a trial

witness, defense counsel did not have a "similar motive to develop" her testimony at the suppression hearing.

Under Fed. R. Evid. 804(a)(5), a witness is "unavailable" if "absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance . . . by process or other reasonable means." To establish "unavailability," it must be shown that reasonable, good-faith efforts to locate the witness were made. *See United States* v. *Thomas*, 705 F.2d 709, 711-12 (4th Cir. 1983). If a declarant is "unavailable" at trial, his testimony "at another hearing of the same or a different proceeding" is admissible "if the party against whom the testimony is now offered . . . had an opportunity and *similar motive* to develop the testimony by direct, cross or redirect examinations." Fed. R. Evid. 804(b)(1) (emphasis added).

Mrs. Solomon was "absent" from the hearing on the morning of November 14, when she was scheduled to testify, and neither the defense nor the government knew of her whereabouts. As to the government's efforts to procure her attendance on that day, the district court found that the government "summoned [her] to appear at the commencement of trial and . . . required [her] by the subpoena to attend each day of trial until excused." J.A. 301. It is undisputed that Mrs. Solomon was not "excused" by the court on November 6, and thus had a continuing obligation pursuant to the subpoena to appear at trial. Moreover, the government represented to the district court and to us that, on November 6, "it advised Mrs. Solomon to return on November 14, 2000, the day the actual trial was to commence," J.A. 301 (opinion of the district court); indeed, upon this representation, the district court issued a warrant, pursuant to which Mrs. Solomon was arrested later that day. And the defendant concedes that Mrs. Solomon was aware that the trial was to begin on November 14. Br. of Appellant at 11.

The government had no reason to take further precautions to ensure Mrs. Solomon's presence at trial. Its efforts to ensure Mrs. Solomon's attendance on November 14 were reasonable in light of Mrs. Solomon's initial compliance with the subpoena, through her attendance at both the jury's selection and the pre-trial suppression hearing; her willing participation in the pre-trial proceedings at its request; and its advice to her to return on November 14. *See Thomas*, 705 F.2d at 712

(concluding that the government's attempts to locate witnesses by the service of process were reasonable); *cf. United States* v. *Puckett*, 692 F.2d 663, 670 (10th Cir. 1982) (concluding that inability to procure witnesses was due to the "attorney's tardiness in failing to attempt to subpoena [them] until near the end of the second week of trial"). The district court did not err in concluding that the government had made reasonable efforts to secure her attendance such as to satisfy the threshold requirement of "unavailability."

Solomon next argues that there was not, at the suppression hearing, a motive similar to that at trial, to develop Mrs. Solomon's testimony, because the only purpose of the suppression hearing was to establish the consensual nature of the search of Solomon's home and of the seizure of firearms by authorities. By contrast, Solomon notes, at the trial, the government introduced Mrs. Solomon's testimony to establish the fact that he possessed seized firearms.

However, defense counsel did have a "similar motive" at the suppression hearing to develop Mrs. Solomon's testimony on the issue of firearms possession. Even prior to the trial itself, Solomon's counsel knew that Solomon's possession of firearms would be of central importance at Solomon's trial on charges of illegal possession of firearms. At the suppression hearing, the government elicited Mrs. Solomon's testimony establishing the defendant's ownership and possession of these firearms. J.A. 14, 17 (identifying their home as the location of the firearms; identifying locations where he kept his firearms; and confirming that defendant possessed firearms on the date in question). Upon the elicitation of this testimony by the prosecution, Solomon's counsel had ample motive to cross-examine Mrs. Solomon on the possession issue, if for no other reason than for protection in the event of her unavailability at trial. Absent cross-examination at the suppression hearing, Mrs. Solomon's testimony as to her husband's possession of the firearms might go unchallenged at trial, establishing the chief element of the charged offense. *See* 30B Michael Graham, *Federal Practice and Procedure* § 7073 ("[A] decision not to cross-examine . . . at a preliminary hearing . . . assumes the risk that the witness will not be available at trial.").

Defendant's reliance on *United States* v. *Salerno*, 505 U.S. 317 (1992), is misplaced, because that case explicitly left open for the

lower court the question of whether the United States in fact had a "similar motive" to develop through cross-examination before the grand jury, the testimony that it sought to introduce at trial. *Id*. at 325.

Accordingly, the district court did not abuse its discretion by admitting at trial, under Fed. R. Evid. 804(b)(1), Mrs. Solomon's suppression hearing testimony.[1]

### III.

Solomon also challenges the admission, under Federal Rule of Evidence 807, of ATF Form 4473, which recorded his purchase of one of the firearms seized from his house. The ATF Form is required to be maintained by all firearms dealers at their place of business. The particular Form 4473 that was introduced at Solomon's trial was provided to the prosecution by Mr. Kearney, the current record custodian at the K-Mart in Florida where the firearm was purchased. The Form contains information such as Solomon's name, address, sex, age, height, weight, race and driver's license number. It is signed and dated by Solomon. The Form also contains the type, model, caliber of gauge, serial number, and manufacturer of the firearm. Finally, the title, transaction serial number, and date of the transaction appear on the Form. J.A. 283-84; 308.

We agree with the district court that this Form satisfies the requirements for admission under Rule 807.[2] It is evidence of a "material

---

[1]Alternatively, the testimony is admissible under the residual hearsay exception, because it "ha[d] equivalent circumstantial guarantees of trustworthiness." Fed. R. Evid. 804(b)(5). The defendant's own counsel questioned Mrs. Solomon, and a contemporaneous transcript was prepared of her statement, which was made voluntarily under oath. There is also no evidence that Mrs. Solomon had any incentive to lie; and, had she lied, she could have been prosecuted for perjury. *See United States* v. *Clarke*, 2 F.3d 81, 84-85 (4th Cir. 1993) (listing these criteria as evidence of circumstantial guarantees of trustworthiness).

[2]Federal Rule of Evidence 807 provides, in relevant part, that

A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is

fact" — purchase of a firearm, the seizure of which triggered the instant prosecution. It is "more probative" than other evidence that "can be procured through reasonable means" because "it was not reasonable to require the government to bring in the record custodians from different parts of the country to prove th[e fact of the purchase]." *United States* v. *Simmons*, 773 F.2d 1455, 1459 (4th Cir. 1985) (admitting a Firearms Trace form under Fed. R. Evid. 803(24), which is now Rule 807). Finally, "the general purposes of [the Federal Rules of Evidence] and the interests of justice [are] best served" by the admission of this form, as it possesses a "high degree of reliability." K-Mart was required by law to complete this form when it sold the firearm to Solomon, J.A. 309 (opinion of the district court), and, as we have previously observed, there is "simply no reason for the [sellers] of these weapons to falsify the entries on the routine ATF forms," *Simmons*, 773 F.2d at 1459.

Solomon's contention that Mr. Kearney fabricated the document upon receipt of BATF's requesting letter is far-fetched. The form includes information that does not appear in the BATF letter, such as the transaction serial number; it is signed by Mr. Solomon and the salesman; and it spells the name of Mr. Solomon's street differently than does the BATF letter.

The district court did not err in admitting the ATF Form 4473 into evidence.

## IV.

Lastly, Solomon argues that, absent Mrs. Solomon's statements and the ATF Form, there is insufficient evidence to support his con-

---

    not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. . . .

Fed. R. Evid. 807.

viction for the unlawful possession of firearms. However, not only were Mrs. Solomon's statements and the ATF Form 4473 properly admitted, as we have held, but other evidence, as well, established Solomon's possession of the firearms in question. A police officer testified that he knew that Solomon possessed the firearms and that in fact he removed the firearms from Solomon's house, J.A. 69-71, and, Solomon himself made two statements to the police officers confirming that in fact he had been in possession of the firearms seized. J.A. 73, 186. Thus, sufficient evidence supported Solomon's conviction, even absent the evidence that we hold today was properly admitted.

## CONCLUSION

For the reasons that appear, the judgment of conviction and sentence are affirmed.

*AFFIRMED*